## IN THE UNITED STATES DITRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| REGINA NOCK, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>BOARDROOM, INC. D/B/A BOTTOM LINE INC.,<br><br>    Defendant. | Case No. 22-cv-11296-BAF-EAS |

## DEFENDANT BOARDROOM, INC. D/B/A BOTTOM LINE INC'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Boardroom, Inc. f/k/a Bottom Line Inc. respectfully moves this Court to dismiss Plaintiff's Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that: (1) Plaintiff fails to state a claim; and (2) Plaintiff's claims are time-barred. Pursuant to Local Rule 7.1(a), Defendant's counsel certifies that on October 28, 2022 they communicated in writing with Plaintiff's counsel, explaining the nature of the relief sought in this Motion, and seeking concurrence in that relief. Plaintiff's counsel indicated that Plaintiff would oppose this Motion and that further discussion toward concurrence would not be productive.

Respectfully submitted,

VARNUM LLP

DATED:  November 2, 2022          By:   /s/Jon M. Bylsma
                                        Jon M. Bylsma  (P48790)
                                        333 Bridge Street NW, Suite 1700
                                        Grand Rapids, MI 49504
                                        (616) 336-6530
                                        jmbylsma@varnumlaw.com


                                        DAVIS+GILBERT LLP
                                        David S. Greenberg
                                        (*pro hac vice* to be filed)
                                        Angela M. Dunay
                                        (*pro hac vice* to be filed)
                                        1675 Broadway
                                        New York, NY 10019
                                        (212) 468-4800
                                        dgreenberg@dglaw.com
                                        adunay@dglaw.com

                                        *Attorneys for Defendant Bottom Line,
                                        Inc.*

20209753.1

## IN THE UNITED STATES DITRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

REGINA NOCK, individually and on behalf of all others similarly situated,

        Plaintiff,

    v.

BOARDROOM, INC. D/B/A BOTTOM LINE INC.,

        Defendant.

Case No. 22-cv-11296-BAF-EAS

## DEFENDANT BOARDROOM, INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................ii

STATEMENT OF ISSUES PRESENTED.............................................vii

STATEMENT OF MOST CONTROLLING/MOST APPROPRIATE
AUTHORITY................................................................................viii

PRELIMINARY STATEMENT ........................................................... 1

FACTUAL BACKGROUND ............................................................... 4

    A.   The Michigan PPPA ................................................................ 4

    B.   Plaintiff's Allegations of PPPA Violations. ........................................ 5

ARGUMENT ................................................................................ 7

    I.   Plaintiff's Complaint Fails to State a Claim under the PPPA. ............ 7

    II.   Plaintiff's Claims Are Time Barred.................................... 12

        a.   The Nature and Origin of the PPPA is the Traditional
            Common Law Right to Privacy, Making the Three-Year
            Limitations Period Applicable.................................... 13

        b.   The Three-Year Statute of Limitations Applies Since
            Plaintiff Seeks to Recover for "Injury to a Person" ................. 15

        c.   Recent PPPA Decisions on the Limitations Issue Were
            Incorrectly Decided. .............................................. 17

    III.   Alternatively, The Complaint Must Be Dismissed Because
         Plaintiff Lacks Article III Standing. ........................................ 21

    IV.   Dismissal with Prejudice is Warranted................................. 23

CONCLUSION ............................................................................ 24

## TABLE OF AUTHORITIES

Page

**Cases**

*Arbre Farms Corp. v. Great Am. E&S Ins..*,
  No. 1:20-CV-551, 2021 U.S. Dist. LEXIS 4545 (W.D. Mich. Jan.
  11, 2021), *aff'd sub nom. Arbre Farms Corp. v. Great Am. E&S
  Ins. Co.*, No. 21-1091, 2021 U.S. App. LEXIS 32852 (6th Cir.
  Nov. 2, 2021) .................................................................................................. 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................... 7

*Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*,
  569 F. App'x 438 (6th Cir. 2014) .................................................................. 23

*Barry v. Ally Fin., Inc.*,
  No. 20-12378, 2021 U.S. Dist. LEXIS 129573 (E.D. Mich. July
  13, 2021) .......................................................................................................... 9

*Bassett v. NCAA*,
  528 F.3d 426 (6th Cir. 2008) .......................................................................... 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................. 7, 9, 12

*Bishop v. Lucent Techs., Inc.*,
  520 F.3d 516, 520 (6th Cir. 2008) ................................................................... 7

*Boelter v. Advance Mag. Publishers Inc.*,
  210 F. Supp. 3d 579 (S.D.N.Y. 2016) ....................................................... 13, 14

*Boelter v. Hearst Communications, Inc.*,
  269 F. Supp. 3d 172 (S.D.N.Y. 2017) ....................................................... 14, 15

*Boelter v. Hearst Communications, Inc.*,
  No. 15-cv-03934-AT-JLC (S.D.N.Y.), ECF No. 163 ...................................... 15

*Campbell v. Jobson Med. Info., LLC*,
  22-cv-11326 (E.D. Mich. June 15, 2022) .......................................................... 1

*Coal Operators & Assocs. Inc. v. Babbitt,*
    291 F.3d 912 (6th Cir. 2002)................................................................ 21

*Dabish v. McMahon,*
    818 F. App'x 423 (6th Cir. 2020) ...................................................... 18

*DiPonio Construction Co. v. Rosati Masonry Co.,*
    246 Mich. App. 43, 631 N.W.2d 59 (2001)................................. 18, 19

*Fotis v. This Old House Ventures, LLC,*
    22-cv-549 (W.D. Mich. June 14, 2022) .............................................. 1

*Garden City Osteopathic Hosp. v. HBE Corp.,*
    55 F.3d 1126 (6th Cir. 1995)............................................................. 13

*Goodrich v. Essence Communications, Inc.,*
    22-cv-11322 (E.D. Mich. June 15, 2022).............................................. 1

*Hall v. Farm Journal, Inc.,* No. 2:21-cv-11811,
    ECF No. 26 (E.D. Mich. April 5, 2022) .......................................... 17

*Hearn v. Rickenbacker,*
    428 Mich. 32, 400 N.W.2d 90, 92 (Mich. 1987) ............................ 13

*Krassick v. Archeological Inst. Of Am.,*
    No. 2:21-CV-180, 2022 U.S. Dist. LEXIS 103417 (W.D. Mich.
    June 9, 2022) ........................................................................ 17, 18, 19

*Krum v. Sheppard,*
    255 F. Supp. 994 (W.D. Mich. 1966), aff'd 407 F.2d 490 (6th Cir.
    1967)................................................................................................... 16

*League of United Latin Am. Citizens v. Bredsen,*
    500 F.3d 523 (6th Cir. 2007)................................................................ 7

*Lewis v. Casey,* 518 U.S. 343 (1996) ....................................................... 21

*Lin v. Crain Commc'ns Inc.,*
    No. 19-11889, 2020 U.S. Dist. LEXIS 7442 (E.D. Mich. Jan. 16,
    2022)................................................................................................... 20

*Littlejohn v. Mackinac Fin. Corp.*,
  No. 2:06-CV-20, 2006 U.S. Dist. LEXIS 49488 (W.D. Mich. July
  19, 2006).............................................................................................. 24

*Markham et al. v. National Geographic Partner's, LLC*,
  No. 1:19-cv-00232 (W.D. Mich.), ECF No. 26 ............................................ 14, 15

*Marks v. Harvey & Carol Hulstron*,
  No. 294453, 2010 Mich. App. LEXIS 998 (Mich. Ct. App. May
  27, 2010)............................................................................................. 18

*McCree v. Cont'l Mgmt., LLC*,
  No. 351171, 2021 Mich. App. LEXIS 1784 (Mich. Ct. App. Mar.
  18, 2021)............................................................................................. 18

*Michigan Emp. Sec. Comm'n v. Westphal*,
  214 Mich. App. 261, 542 N.W.2d 360 (Mich. Ct. App. 1995)........................... 17

*Mitchell v. Magnificat, Inc.*,
  22-cv-11299 (June 13, 2022) ..................................................................... 1

*Moeller v. Am. Media, Inc.*,
  235 F. Supp. 3d 868 (E.D. Mich. 2017)..................................................... 13, 20

*Nashel v. N.Y. Times Co.*,
  2022 U.S. Dist. LEXIS 185552 (E.D. Mich. 2022) ..................................... *passim*

*Nashel v. The New York Times Company*,
  No. 22-cv-10633-SJM-DRG, ECF No. 15 (filed June 7, 2022) ........................ 23

*National Sand, Inc. v. Nagel Construction, Inc.*,
  182 Mich. App. 327, 451 N.W.2d 618 (Mich. Ct. App.1990)........................... 16

*Ott v. Midland-Ross Corp.*,
  523 F.2d 1367 (6th Cir. 1975) ................................................................. 12

*Palmer Park Square, LLC v. Scottsdale Ins. Co.*,
  878 F.3d 530 (6th Cir. 2017) ................................................................. 13, 19

*Perlin v. Time Inc.*,
  237 F. Supp. 3d 623 (E.D. Mich. 2017)....................................................... 13

*Pestrak v. Ohio Elections Comm'n,*
  926 F.2d 573, 576 (6th Cir. 1991) ....................................................21

*Phifer v. City of Grand Rapids, Michigan,*
  657 F. Supp. 2d 867 (W.D. Mich. 2009) ...........................................23

*Pratt v. KSE Sportsman Media, Inc.,*586 F. Supp. 3d 666,
  2022 U.S. Dist. LEXIS 27591  (E.D. Mich. 2022) ..................... 17, 18, 19

*Prestel v. Christianity Today International,*
  22-cv-551 (W.D. Mich. June 15, 2022) ...............................................1

*R.R. v. Highlights for Children, Inc.,*
  22-cv-11329 (E.D. Mich. June 15, 2022)..............................................1

*Rentola v. Dow Jones & Co., Inc.,*
  No. 4:20-cv-11589 (E.D. Mich.), ECF No. 12......................................15

*Rhule v. Armstrong,* 187 N.W.2d 223,
  187 N.W.2d 223 (Mich. 1971) ...........................................................19

*Rubin v. Source Media LLC,*
  22-cv-11361 (E.D. Mich. June 17, 2022).............................................1

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ..........................................................................22

*TransUnion LLC v. Ramirez,*
  141 S.Ct. 2190 (2021) .................................................................21, 22

*Wheaton v. Apple Inc.,* No. C 19-02883 WHA,
  2019 U.S. Dist. LEXIS 185524 (N.D. Cal. Oct. 25, 2019)....................10

**Statutes**

Fed. R. Civ. P. 12(b)(6) ......................................................... 8, 12, 24

M.C.L. § 445.1711 (1989)................................................................. 1

M.C.L. § 445.1712 (1989).......................................................... 5, 7, 9

M.C.L. § 445.1715 (1989)........................................................... 5, 16

M.C.L. § 600.2640(1)........................................................................18

v

M.C.L. § 600.5805(2) ............................................................*passim*

M.C.L. § 600.5812 ...................................................... 17, 20

M.C.L. § 750.147b ................................................................ 18

Mich. Pub. Act No. 378 ......................................................... 4

2016 Mich. Pub. Acts 92 ....................................................... 9

## STATEMENT OF ISSUES PRESENTED

1. Whether Plaintiff fails to plausibly allege that Defendant unlawfully disclosed her personal information in violation of the Michigan Preservation of Personal Privacy Act ("PPPA") during the relevant time period, requiring the Court to dismiss that claim.

   Defendant's Answer: YES.

2. Whether the three-year statute of limitations in M.C.L. § 600.5805(2), which is the limitations period traditionally recognized under common law for the invasion of privacy claims like that which Plaintiff alleges, bars Plaintiff's claim under the Michigan PPPA.

   Defendant's answer: YES.

## <u>STATEMENT OF MOST CONTROLLING / MOST APPROPRIATE AUTHORITY</u>

The controlling and/or appropriate authority for this Motion includes:

1. Federal Rule of Civil Procedure 12(b)(6)

2. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

3. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

4. *Nashel v. N.Y. Times Co.*, 2022 U.S. Dist. LEXIS 185552 (E.D. Mich. 2022)

5. Mich. Comp. Laws § 600.5805(2)

6. *Garden City Osteopathic Hospital v. Hbe Corp.*, 55 F.3d 1126 (6th Cir. 1995)

## PRELIMINARY STATEMENT

This case is one of *scores* of identical lawsuits filed by Plaintiff's counsel over the past couple of years, one of the parting shots in a war counsel has been waging on the publishing industry for some time. Intent on squeezing every last dollar out of the industry before the well dried up for good, in late 2021 and early 2022 counsel filed a barrage of "cookie-cutter" class action complaints against dozens of media companies of all stripes and sizes.[1] Each of these lawsuits asserts an identical claim, disclosure of "Private Reading Information" in violation of the Michigan Preservation of Personal Privacy Act, M.C.L. § 445.1711, *et seq.* (the "PPPA"). Each seeks a multi-million dollar award pursuant to a statutory damages scheme that the Michigan Legislature wisely repealed years ago, replacing it with a framework that now requires PPPA plaintiffs to demonstrate actual damages. And each suffers from the same infirmity, asking the Court to award monumental statutory damages based on nothing more than inference and conjecture that the defendant disclosed

---

[1] For example, the following substantially identical complaints were all filed during just *one week* in June 2022: *Rubin v. Source Media LLC*, 22-cv-11361, (E.D. Mich. June 17, 2022); *R.R. v. Highlights for Children, Inc.*, 22-cv-11329 (E.D. Mich. June 15, 2022); *Campbell v. Jobson Med. Info., LLC*, 22-cv-11326 (E.D. Mich. June 15, 2022); *Goodrich v. Essence Communications, Inc.*, 22-cv-11322 (E.D. Mich. June 15, 2022); *Prestel v. Christianity Today International*, 22-cv-551 (W.D. Mich. June 15, 2022); *Fotis v. This Old House Ventures, LLC*, 22-cv-549 (W.D. Mich. June 14, 2022); *Mitchell v. Magnificat, Inc.*, 22-cv-11299 (June 13, 2022).

the plaintiff's information during an ever-shrinking recovery window that has now finally closed.

Defendant Boardroom, Inc. f/k/a Bottom Line Inc. ("Boardroom," "Bottom Line" or the "Company") was one of the targets of counsel's final campaign before the clock finally ran out. Boardroom was a Stamford, Connecticut-based company that published books, newsletters, and online content. In 2021, the Company sold off its assets and operations and began winding down its business. Before that process was complete, however, on June 10, 2022 plaintiff Regina Nock filed the within putative PPPA class action complaint, baldly alleging that (i) at some unspecified time on or before July 30, 2016—the last date for which a PPPA plaintiff could recover statutory damages without proving actual damages—she was a subscriber to Boardroom's *Bottom Line Personal* newsletter, and (ii) at some unspecified time on or before July 30, 2016, Boardroom disclosed certain of her personal information to an unnamed third-party data aggregator. (Compl. ¶ 9.)

In asserting this claim, Plaintiff offers nothing more than threadbare and conclusory factual allegations concerning any purported disclosures Boardroom might have made related to Plaintiff's and the Class's "Private Reading Information." Even accepting those limited, conclusory allegations as true, the Complaint fails to state a claim upon which relief can be granted and must be dismissed for two independent reasons.

***First,*** Plaintiff fails to plead facts that plausibly support her claim that Boardroom disclosed *anyone's* personal information in violation of the PPPA, much less that Boardroom disclosed *hers*, during the seven-week period ending on July 30, 2016 (the "Relevant Period"). That period is the only one for which Plaintiff can seek recovery, even under her own construction of the PPPA and its limitations period. Plaintiff bases her claim entirely on "documented evidence" of Boardroom's alleged practices: a single screenshot from earlier this year allegedly showing that "a list broker" marketed access to a so-called "Bottom Line Enhanced Masterfile []" Mailing List" that allegedly contains information about Bottom Line subscribers. But on its face this "mailing list" states that it contains customer counts "through ***April 30, 2022***"—nearly six years after the Relevant Period. Further, Plaintiff fails to allege any connection between this "list broker" advertising the "Enhanced Masterfile [] Mailing List" and any disclosure of Plaintiff's PPPA-protected information by Boardroom. Plaintiff also fails to allege any facts concerning the origin of the purported "Enhanced Masterfile Mailing List," whether Bottom Line itself disclosed any customer information to the "list broker," or what information about which subscribers would have been included in that list. As another judge of this Court held only weeks ago in a case involving nearly identical circumstances, given the complete lack of allegations plausibly supporting any alleged violation of

3

the PPPA during the Relevant Period, Plaintiff's claim is clearly based on pure conjecture. The Court should dismiss that claim.

**Second**, even assuming Plaintiff had otherwise stated a plausible claim, that claim is time-barred. Plaintiff asserts that her claim is subject to a six-year "catch-all" statute of limitations. (Compl. at 2 n.1.) But PPPA claims are grounded in the common law and are akin to personal injury claims, which are subject to a *three-year* limitations period under M.C.L. § 600.5805(2). That three-year statute of limitations applies here. Accordingly, because Plaintiff's claim for statutory damages seeks recovery only for PPPA violations taking place before July 31, 2016, any such claim had to be brought by July 30, 2019. Plaintiff did not file her Complaint until June 10, 2022, rendering her claim untimely by almost three years.

For each of these reasons, addressed more fully below, the Complaint fails as a matter of law, and the Court should dismiss Plaintiff's claim.

## FACTUAL BACKGROUND

### A. The Michigan PPPA.

Passed in 1988, the PPPA was designed to protect the right to privacy. *Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. No. 5331, Jan. 20, 1989; *see also* 1988 Mich. Pub. Act No. 378 (PPPA is "[a]n act to preserve personal privacy with respect to the purchase, rental, or borrowing of certain materials; and to provide penalties and remedies for violation of this act").

The law was passed in the wake of a similar federal statute, the *Video Privacy Protection Act*, which was enacted following the disclosure of Supreme Court nominee Judge Robert Bork's video rental choices in a newspaper. In enacting the PPPA, the Michigan legislature went further than the federal act. In addition to video rental records, the PPPA's scope also includes "books or other written materials," prohibiting certain "disclosure[s]" of records of information "concerning the purchase, lease, rental, or borrowing of those materials." M.C.L. § 445.1712 (1989).

Of particular relevance here, initially the PPPA contained a statutory damages provision, permitting a customer to bring an action for actual damages or $5,000 in statutory damages, whichever was greater. M.C.L. § 445.1715 (1989). After a series of potentially ruinous class actions against magazine publishers over "direct marketing" mailing practices, however, the Michigan Legislature amended the PPPA in 2016 (the "2016 Amendment"). Among other changes, the 2016 Amendment expressly removed the statutory damages provision, and in its place, provided only for the recovery of *actual* damages. M.C.L. § 445.1715(2). The 2016 Amendment took effect on July 31, 2016.

## B. Plaintiff's Allegations of PPPA Violations.

Plaintiff Regina Nock filed this action on June 10, 2022, in a last-ditch effort to take advantage of the pre-amendment version of the PPPA allowing for statutory damages. In the Complaint, Plaintiff alleges that she "was a subscriber to *Bottom*

*Line Personal* newsletter" at some unidentified point in time before July 31, 2016. (Compl. ¶ 9.)   Plaintiff further alleges that at "various times" before July 31, 2016 "Bottom Line disclosed its customers' Private Reading Information[2] to data aggregators and appenders" without consent or notice, and that such disclosures violated the PPPA.  (*Id.* at ¶ 41, 42, 60.)

Plaintiff purports to ground her conclusory allegations upon a single piece of "documented evidence" (Compl. ¶ 2): a screenshot from a list broker, NextMark, Inc. ("NextMark"), that Plaintiff alleges "offers to provide renters access to the mailing list titled 'Bottom Line Enhanced Masterfile (formerly Boardroom) Mailing List."   (*Id.*; *see* ECF No. 1-2, PageID.30 ("Plaintiff's Exhibit A" or the "Screenshot").)  This Screenshot reflects that the "mailing list" it references purports to "count" "subs/buyers" "through April 30, 2022."  (*See* Plaintiff's Exhibit A.)  The Screenshot does not indicate what information a purchaser of the "Mailing List" receives, what information NextMark collects or includes in the list, whether such information identifies the purchases made by consumers, which consumers from which states it includes or excludes, or how NextMark obtained the information. (*Id.*)  Plaintiff does not allege any facts relevant to those critical pieces of information.

---

[2] "Private Reading Information" ("PRI") refers to the customers' names, home addresses, and the "titles of publications subscribed to."

## **ARGUMENT**

### I.  **Plaintiff's Complaint Fails to State a Claim under the PPPA.**

To survive a motion to dismiss, Plaintiff must allege facially plausible facts supporting her claim that Bottom Line is liable under the PPPA.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  It is not enough to state facts that "merely create[] a suspicion of a legally cognizable right of action." *Nashel v. N.Y. Times Co.*, 2022 U.S. Dist. LEXIS 185552, at *10 (E.D. Mich. 2022) (citing *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  Instead, the plaintiff's factual allegations "must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredsen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in the original).

To successfully plead a claim under the PPPA, a plaintiff must allege facts that, if proved, would show that (i) the defendant disclosed the relevant information about plaintiff without the plaintiff's consent, and (ii) the information specifically identified the plaintiff to the party receiving that information.  M.C.L. § 445.1712 (1989).  Here, Plaintiff needed to plead plausible facts demonstrating that, during the Relevant Period, Bottom Line unlawfully disclosed her Private Reading Information—her full name, title of publication subscribed to, and home address, to third parties.

7

Plaintiff's Complaint contains no facts plausibly supporting her allegations that Bottom Line unlawfully disclosed her or any other customers' private information in violation of the PPPA during the Relevant Period. Indeed, her Complaint focuses largely on a slew of allegations related to the legislative history and purpose of the PPPA, in hopes that those will motivate the Court to simply infer a wrongful disclosure based on the one piece of "documented evidence" that underlies her claim. (Compl. ¶¶ 14-40.) This is not sufficient to survive a motion to dismiss under Rule 12(b)(6).

Plaintiff alleges, with insufficient support, that "Bottom Line discloses its customers' [PRI] to data aggregators and appenders." (Compl. ¶ 41.) She also alleges that "Bottom Line then rents and/or exchanges its mailing lists—which include [PRI] . . . to other data aggregators and appenders, other consumer-facing businesses, non-profit organizations seeking to raise awareness and solicit donations, and to political organizations soliciting donations, votes, and volunteer efforts." (*Id.* at 42.) Finally, she alleges that "companies can purchase and/or obtain mailing lists from Bottom Line that identify [its] customers by their most intimate details." (*Id.* at 44.) The support for these allegations, however, comes entirely from a screenshot from NextMark marketing a so-called "Bottom Line Enhanced Masterfile (formerly Boardroom) Mailing List." (Compl. ¶¶ 41-42.) The Screenshot, however, is insufficient to plausibly support Plaintiff's claim.

8

First, in the Screenshot, NextMark expressly states that the mailing list contains "counts through 04/30/2022." This is nearly *six years after* the Relevant Period in which Plaintiff conjectures that Bottom Line disclosed her and the Class's data. Indeed, the Screenshot and the information it purports to offer come from a time period in which the PPPA more liberally permits the disclosure of certain information than the statute allowed in July 2016. *See* Mich. Comp. Laws § 445.1712 (effective July 31, 2016) (limiting prohibited disclosures to those that personally identify customers as "having purchased, leased, rented, or borrowed" certain materials); S.B. 490, 2016 Mich. Pub. Acts 92 ("clarifying" that PPPA does not prohibit disclosures in the ordinary course of business). Plaintiff asks the Court to speculate about what Boardroom did or did not disclose in July 2016, based on what she conjectures was happening in connection with the NextMark list in the Screenshot as of April 30, 2022. (Compl. ¶¶ 41-44.) "[W]ithout any factual basis in the pleadings to support that speculative possibility," however, the Complaint "fails to satisfy *Twombly*, which limits claimants to plausible claims, not just possible ones." *See Barry v. Ally Fin., Inc.*, No. 20-12378, 2021 U.S. Dist. LEXIS 129573, at *15 (E.D. Mich. July 13, 2021). The Screenshot does not support an allegation that Boardroom improperly disclosed anyone's information to NextMark or to any other third-party during the Relevant Period.

Relatedly, Plaintiff alleges no facts plausibly supporting even that the 2022 "mailing list" contains the type of customer information of which the PPPA prohibits disclosure. On this too, she simply asks the Court to speculate. On this, too, the Court cannot do so.

Second, the Complaint contains no support for Plaintiff's conjecture that *Boardroom* actually disclosed *her* information. The Screenshot shows that in 2022 *NextMark* was offering a "Bottom Line Enhanced Masterfile (formerly Boardroom) Mailing List" containing information about "subs/buyers" from the twenty-four months preceding April 30, 2022. (ECF No. 1-2, PageID.30.) There is no indication as to precisely how NextMark acquired that information and no indication as to whether the list includes information concerning *any* Michigan consumer, much less Plaintiff. Once again, Plaintiff asks the Court to speculate about these issues.

Other courts have recognized that the types of factual assertions put forth by Plaintiff are insufficient to state a plausible claim. *See Nashel*, 2022 U.S. Dist. LEXIS 185552; *see also Wheaton v. Apple Inc.*, No. C 19-02883 WHA, 2019 2019 U.S. Dist. LEXIS 185524, at *11-12 (N.D. Cal. Oct. 25, 2019) (dismissing a PPPA claim where plaintiffs attempted to rely on screenshots of third-party data cards appearing on third party data broker websites). Indeed, only weeks ago another judge of this Court dismissed a strikingly similar PPPA complaint against The New York Times for failure to state a plausible claim.

In *Nashel*, the plaintiffs brought a virtually identical claim against the Times, alleging that the Times violated the PPPA and disclosed subscriber information during the period ending on July 30, 2016.  In *Nashel*, however, plaintiffs based their claim on a NextMark data card published online in 2007, nearly nine years earlier than the period at issue.  In fact, the plaintiff in *Nashel* actually alleged *more* facts than Plaintiff offers here.  The *Nashel* plaintiffs attempted to bolster their claim, amending their complaint to reference multiple "third-party data cards, Defendant's privacy policy, and a case study about Virginia Beach renting Defendant's subscriber list."  *Nashel*, 2022 U.S. Dist. LEXIS 185552, at *10.  Despite these allegations, however, Judge Murphy found that "Plaintiffs relied on evidence that creates *only suspicion* as to whether Defendant violated the PPPA during the pre-July 31, 2016 period."  *Id.* (emphasis added).  The court noted that while the data cards "appeared to claim access to the private reading information" of active subscribers, "nothing on the data cards explains how the list brokers received Defendant's subscription list."  *Id.* at *12-13.  Like Plaintiff, the *Nashel* plaintiffs "could only connect Defendant's alleged conduct to the data cards through a large inferential leap."  *Id.* at *13-14.  While the Court must "draw[] every reasonable inference in [Plaintiff's] favor," *Bassett v. NCAA*, 528 F.3d 426, 430, (6th Cir. 2008), "the Court need not infer into existence the central element of a PPPA claim."  *Nashel*, 2022 U.S. Dist. LEXIS 185552, at *14.

11

Just like in *Nashel*, Plaintiff's Complaint here does not cross the "line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557 (internal citation omitted).  Plaintiff asks the Court to engage in "large inferential leaps" to connect Boardroom and its conduct over a seven-week period in mid-2016 to that lone 2022 NextMark data card and whatever information the list it reflects contained.  This cannot support a plausible claim.  Accordingly, the Court should dismiss Plaintiff's Complaint with prejudice.

## II.   Plaintiff's Claims Are Time Barred.

Even assuming *arguendo* that Plaintiff had sufficiently set forth allegations to state a claim for a violation of the PPPA—which she has not—the Court should still dismiss the Complaint because it is also untimely.  *See Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975) ("[A] complaint can be dismissed as barred by the applicable statute of limitations under Fed. R. Civ. P. 12(b)(6) when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief.").  The PPPA does not include an express limitations period, and the Michigan Supreme Court has never ruled on the statute of limitations applicable to PPPA claims.  Nonetheless, Plaintiffs' claims are for personal injuries resulting from an invasion of privacy.  Her claims are subject to the three-year statute of limitations set forth in Mich. Comp. Laws § 600.5805(2) ("Section 5805").  Applying the appropriate three-year statute of limitations, Plaintiff had until July 30,

2019 to file a complaint seeking recovery for the injuries allegedly incurred—a deadline she missed by nearly three years.

### a. The Nature and Origin of the PPPA is the Traditional Common Law Right to Privacy, Making the Three-Year Limitations Period Applicable.

The Sixth Circuit has held that courts should look to the "nature and origin" of a claim to determine its limitations period when a statutory claim does not specify an express limitation. *See Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1132-33 (6th Cir. 1995); *Palmer Park Square, LLC v. Scottsdale Ins. Co.*, 878 F.3d 530, 534 (6th Cir. 2017) (in determining the appropriate limitations period for a statutory claim, the Sixth Circuit, quoting the Michigan Supreme Court, has held that a "court should focus on the 'nature of the right sued upon' rather 'the form of [the] action or the relief demanded.'") (quoting *Hearn v. Rickenbacker*, 428 Mich. 32, 400 N.W.2d 90, 92 (Mich. 1987)).

It has been well-established by numerous courts that the PPPA finds its origins in, and is by nature, a common law tort of invasion of privacy in the context of reading materials. *See Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 873 (E.D. Mich. 2017) ("Subscribers' right to privacy in their personal-reading information is grounded in an interest 'traditionally regarded as providing a basis for a lawsuit in English or American courts.'"); *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 641 (E.D. Mich. 2017) ("[T]he right guaranteed by the [PPPA] is similar in kind to other

13

privacy rights that were gradually recognized by American courts over the course of the last century . . ."); *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 590 (S.D.N.Y. 2016) (explaining that "the harms contemplated by [the PPPA and its federal analogue] have close ties to those recognized by the common law tort of invasion of privacy"). Throughout the Complaint, Plaintiff also recognizes that the PPPA seeks to protect privacy rights. (Compl. ¶ 15) ("Recognizing the need to further protect its citizens' privacy rights, Michigan's legislature enacted the PPPA to protect privacy . . .").

A claim for a violation of the PPPA is a claim for redress of an invasion of privacy, which is a common law claim that traditionally sounds in tort. Since Michigan courts consistently apply § 5805's three-year statute of limitations to common law privacy-based claims, this Court should apply that same statute of limitations to Plaintiff's PPPA claim. Indeed, in considering which statute of limitations applies to PPPA claims, other federal courts have applied Section 5805's limitations period. *See Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172, 187 (S.D.N.Y. 2017). This Court should do likewise.

In fact, Plaintiff's counsel themselves have previously asserted that the three-year statute of limitations applied to other PPPA claims they have pursued. Just three years ago, Plaintiff's counsel argued that Section 5805's three-year statute of limitations period should have been tolled in a PPPA case, without asserting that a

14

six-year statute of limitations applied. *See Markham et al. v. National Geographic Partner's, LLC*, No. 1:19-cv-00232 (W.D. Mich.), ECF No. 26, at Page Id. 133-4. Similarly, in responding to a motion to dismiss on untimeliness grounds, Plaintiff's counsel stated that "[c]laims under the [VRPA] are subject to a 'three-year statute of limitations,'" and never invoked the six-year limitations period. *Rentola v. Dow Jones & Co., Inc.*, No. 4:20-cv-11589 (E.D. Mich.), ECF No. 12 at PageId. 196. Likewise, in *Boelter v. Hearst Communications, Inc.*, Plaintiff's counsel admitted that the three-year statute of limitations applied to PPPA claims and, to avoid a time-bar, argued that the three-year limitations period should be tolled. *See Boelter v. Hearst Communications, Inc.*, No. 15-cv-03934-AT-JLC (S.D.N.Y.), ECF No. 163, at 44 (section heading: "HEARST'S ARGUMENT THAT THERE IS NO BASIS TO TOLL THE THREE-YEAR STATUTE OF LIMITATIONS IS WRONG"). Only in more recent cases have they begun arguing for application of the six-year statute of limitations.

### b. The Three-Year Statute of Limitations Applies Since Plaintiff Seeks to Recover for "Injury to a Person."

Even if this Court does not accept that the nature and origin of a PPPA claim is that of a common law privacy claim, Section 5805 must still apply since a PPPA claim is one for personal injury. Section 5805 clearly lays out the statute of limitations for actions, such as these, involving "injury to a person":

(1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

(2) Except as otherwise provided in this section, the period of limitations is [three] years after the time… or injury for all actions to recover damages… for the injury to a person or property.

Michigan courts have generally taken an expansive view of what constitutes "injury to a person," giving it a much broader meaning than just physical injuries. *See National Sand, Inc. v. Nagel Construction, Inc.*, 182 Mich. App. 327, 451 N.W.2d 618, 620-22 (Mich. Ct. App.1990); *Krum v. Sheppard*, 255 F. Supp. 994, 999 (W.D. Mich. 1966), aff'd 407 F.2d 490 (6th Cir. 1967). The language of the statute confirms the personal injury nature of a PPPA claim. For instance, under the PPPA, recovery is permitted "for damages to the customer identified in a record." M.C.L. § 445.1715 (1989). Furthermore, recoverable damages under both the current and pre-Amendment versions of the PPPA include damages for "emotional distress," reflecting the Michigan Legislature's acknowledgement of the inherently personal nature of the injury the PPPA is intended to redress. The Complaint also makes clear that Plaintiff is seeking to vindicate injuries to herself and the Class. She pleads that Bottom Line's alleged "data compiling and sharing practices . . . puts consumers, especially the more vulnerable members of society, at risk of serious harm from scammers." Compl. ¶ 44. She further claims that she "and the Class suffered

invasions of their statutorily protected right to privacy [] as a result of Defendant's [alleged] wrongful conduct." *Id.* at 52.

Plaintiff will argue, as her counsel has argued elsewhere, that the catch-all six-year limitations period in Section 5813 should be applied. But Michigan courts have held that when two potentially applicable Michigan statutes of limitations are at issue, the more specific statute of limitations should control. *See e.g.*, *Michigan Emp. Sec. Comm'n v. Westphal*, 214 Mich. App. 261, 542 N.W.2d 360, 362 (Mich. Ct. App. 1995) (holding that the application of the more general six-year catch-all statute of limitations when the more specific personal injury statute of limitations is also applicable "would be contrary to both the legislative intent and the judicial rules of construction"). It follows that the more specific three-year statute of limitations for personal injury in Section 5805 should apply here.

### c. Recent PPPA Decisions on the Limitations Issue Were Incorrectly Decided.

Several recent decisions from the Eastern and Western Districts of Michigan have applied the "catch all" six-year limitations period under M.C.L. § 600.5812 ("Section 5812") to PPPA claims. *See Nashel*, 2022 U.S. Dist. LEXIS 185552; *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 36 666, 2022 U.S. Dist. LEXIS 27591 (E.D. Mich 2022); *Hall v. Farm Journal, Inc.*, No. 2:21-cv-11811, ECF No. 26 (E.D. Mich. April 5, 2022); and *Krassick v. Archeological Inst. Of Am.*, No. 2:21-CV-180,

2022 U.S. Dist. LEXIS 103417, at *8 (W.D. Mich. June 9, 2022).  Defendant respectfully submits that those decisions were incorrect under the governing law.

*First*, these cases adopt the erroneous and overly broad rule that any "civil cause of action arising from a statutory violation is subject to the six-year limitation period found in § 5813, if the statute itself does not provide a limitation period." *Nashel*, 2022 U.S. LEXIS 185552, at *7 (citing *DiPonio Construction Co. v. Rosati Masonry Co.*, 246 Mich. App. 43, 631 N.W.2d 59, 66 (2001)).  These holdings contradict decades of Michigan precedent applying Section 5805's three-year statute of limitations to various statutory claims that allege injury to a person, even when the statute is otherwise silent on a limitations period.  *See e.g.*, *Marks v. Harvey & Carol Hulstron*, No. 294453, 2010 Mich. App. LEXIS 998, at *1 (Mich. Ct. App. May 27, 2010) (applying Section 600.5805(2)'s limitations period to a statutory nuisance claim under M.C.L. § 600.2640(1)); *McCree v. Cont'l Mgmt., LLC*, No. 351171, 2021 Mich. App. LEXIS 1784, at *19 (Mich. Ct. App. Mar. 18, 2021) (holding that the three-year limitations period applies to the Housing Act of Michigan and Truth in Renting Act); *Dabish v. McMahon*, 818 F. App'x 423, 427-29 (6th Cir. 2020) (three-year limitations period applies to claims brought under Michigan's Ethnic Intimidation Statute, M.C.L. § 750.147b).

In fact, the cases applying the catch-all six-year statute of limitations rely heavily on the *DiPonio* case. *See Nashel*, 2022 U.S. LEXIS 185552, at *7; *Krassick*,

18

2022 U.S. Dist. LEXIS 103417, at *8-9; *Pratt, Inc.*, 2022 U.S. Dist. LEXIS 27591, at *15.  Respectfully, such reliance in the PPPA context is misplaced, however, because *DiPonio* is distinguishable.  *DiPonio* concerned a claim by one business against another business for unlawful withholding of funds in violation of the Michigan Builder's Trust Fund Act.  *DiPonio Construction Co.*, 246 Mich. App. at 45-46.  Unlike this case and the cases cited above, in *DiPonio* there was no allegation of personal injury upon which to invoke Section 5805.

Similarly, these cases' reliance on *Palmer Park*, which itself relied on *DiPonio*, is misplaced in this context.  *Palmer Park*, 878 F.3d at 540.  Like *DiPonio*, *Palmer Park* did not deal with a claim grounded in tort for an injury to a person.  *Id.* at 539.  Instead, it dealt with a claim for penalty interest on untimely-paid insurance benefits, a cause of action specifically created by the Michigan Insurance Code with no common law analogue.  *Id.*  *Palmer Park* did not create a general rule applying the six-year statute of limitations to *all* statutory causes of action, as these cases seem to read that decision.  *See, e.g., Pratt*, 2022 U.S. Dist. LEXIS 27591, at *15.  Indeed, *Palmer Park* could not have done so, as such a holding would run counter to the many decisions of the Michigan courts applying the three-year limitations period to certain statutory causes of action, such as those cited above.  *See also Rhule v. Armstrong*, 187 N.W.2d 223, 187 N.W.2d 223 (Mich. 1971) (applying three-year limitations period to statutory wrongful death claim.

***Second***, the decisions applying the six-year limitations period from Section 5812 construe the right protected by the PPPA too narrowly. *See Nashel*, 2022 U.S. Lexis 185552, at *8 (finding that "[e]mploying Plaintiffs' more narrow framing, a PPPA claim would fall within the six-year limitations period"). This conclusion fails to recognize that the PPPA seeks to redress an invasion a privacy, which is a common law claim that traditionally sounds in tort. Michigan courts have repeatedly affirmed that the PPPA is derived from the right to privacy. *See, e.g., Moeller*, 235 F. Supp. 3d, 873 (noting "Michigan Legislature recognized subscribers' right to privacy in their personal-reading information, and through the enactment of the PPPA, 'define the injury' and 'articulate the chain of causation that gives rise to the injury."); *Lin v. Crain Commc'ns Inc.*, No. 19-11889, 2020 U.S. Dist. LEXIS 7442, at *4 (E.D. Mich. Jan. 16, 2022) (PPPA seeks to "'preserve personal privacy with respect to the purchase, rental, or borrowing' of written materials, sound recordings, and video recordings" so as to "address[] many concerns related to an 'unwarranted invasion of privacy'") (citations omitted)).

*      *      *

The PPPA's nature and its origins are in the common law right to privacy, and the Plaintiff here seeks to recover for "injury to a person." For these reasons, the Court should apply the three-year statute of limitations, not the six-year limitations period, and should dismiss Plaintiff's claim.

## III.   Alternatively, The Complaint Must Be Dismissed Because Plaintiff Lacks Article III Standing.

If this Court concludes that Plaintiff's alleged privacy injuries do not constitute injuries to a person as contemplated by M.C.L. § 600.5805(2), the Court should alternatively dismiss Plaintiff's PPPA claim because she lacks Article III standing.

Article III standing is needed to confer subject matter jurisdiction upon federal courts. *Coal Operators & Assocs. Inc. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002). To establish the standing under Article III, a plaintiff must show that: (1) he or she has suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; (2) the injury is "fairly traceable" to the challenge action of the defendant; and (3) there is a "substantial likelihood that the relief requested will redress [] the plaintiff's injury." *Id.* at 916 (citing *Pestrak v. Ohio Elections Comm'n*, 926 F.2d 573, 576 (6th Cir. 1991)). To satisfy the requirements of Article III, an injury must be "concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). A named plaintiff who represents a class "must allege and show that they personally have been injured" to confer standing. *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

In *TransUnion,* the Supreme Court held that Article III's injury-in-fact requirement applies in full-force "even in the context of a statutory violation." *TransUnion*, 141 S. Ct. at 2205. The Court rejected the notion that "a plaintiff

21

automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.*; *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). In determining whether the plaintiff satisfied Article III, the *TransUnion* Court considered whether the "alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2204 (internal citations omitted).

The relevant inquiry asks, "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* A plaintiff that is "not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's 'compliance with regulatory law'" fails to satisfy Article III. *Id.* at 2206 (internal citations omitted).

Plaintiff cannot have it both ways. To demonstrate that she has Article III standing, Plaintiff must allege that Bottom Line's purported PPPA violation caused her a particularized personal harm analogous to a common-law injury recognized by American courts. In doing so, Plaintiff must necessarily concede that she suffered a personal injury and apply the three-year statute of limitations provided by Section 5805. If she did not suffer such an injury, then she lacks standing to sue here.

## IV.   Dismissal with Prejudice is Warranted.

Dismissal with prejudice is warranted where the Complaint is filed with inescapable legal deficiencies. *Arbre Farms Corp. v. Great Am. E&S Ins.*, No. 1:20-CV-551, 2021 U.S. Dist. LEXIS 4545, at *12 (W.D. Mich. Jan. 11, 2021), *aff'd sub nom. Arbre Farms Corp. v. Great Am. E&S Ins. Co.*, No. 21-1091, 2021 U.S. App. LEXIS 32852 (6th Cir. Nov. 2, 2021).  Due to the deficiencies, "amendment would be futile" and the complaint must be dismissed with prejudice. *Id.*

Plaintiff's Complaint should be dismissed with prejudice.  Given the scores of identical cases her counsel has filed—including the *Nashel* decision, in which the defendant moved to dismiss based on similar deficiencies before Plaintiff here commenced this action[3]—it is evident that if Plaintiff had additional facts to plead in support of her claim or the numerous cookie-cutter claims that followed, she would have done so.   Moreover, Plaintiff clearly cannot cure her statute of limitations problem with an amended complaint, thus making any amendment futile. *See Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*, 569 F. App'x 438, 443 (6th Cir. 2014) (dismissal with prejudice is proper where a plaintiff "could prove no set of facts in support of its allegations that would entitle it to relief" rendering amendment futile); *see also Phifer v. City of Grand Rapids, Michigan*, 657 F. Supp. 2d 867, 874

---

[3] *See Nashel v. The New York Times Company*, No. 22-cv-10633-SJM-DRG, ECF No. 15 (filed June 7, 2022).

(W.D. Mich. 2009) (dismissal on statute of limitations ground rendered with prejudice); *Littlejohn v. Mackinac Fin. Corp.*, No. 2:06-CV-20, 2006 U.S. Dist. LEXIS 49488, at *11 (W.D. Mich. July 19, 2006) (dismissing claim "with prejudice because it is barred by the two-year limitations period").

## CONCLUSION

For all of the foregoing reasons, this Court should dismiss Plaintiff's Complaint with prejudice for failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

VARNUM LLP

DATED: November 2, 2022        By:   /s/Jon M. Bylsma
                                     Jon M. Bylsma  (P48790)
                                     333 Bridge Street NW, Suite 1700
                                     Grand Rapids, MI 49504
                                     (616) 336-6530
                                     jmbylsma@varnumlaw.com

                                     DAVIS+GILBERT LLP
                                     David S. Greenberg
                                     (*pro hac vice* to be filed)
                                     Angela M. Dunay
                                     (*pro hac vice* to be filed)
                                     1675 Broadway
                                     New York, NY 10019
                                     (212) 468-4800
                                     dgreenberg@dglaw.com
                                     adunay@dglaw.com

                                     *Attorneys for Defendant Bottom Line, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certified that on November 2, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will send notification of such filing to counsel of record.

VARNUM LLP
Attorneys for Defendant

DATED:  November 2, 2022        By:  <u>/s/Jon M. Bylsma</u>
Jon M. Bylsma  (P48790)
333 Bridge Street NW, Suite 1700
Grand Rapids, MI 49504
(616) 336-6530
jmbylsma@varnumlaw.com

20209728.1